Katherine M. Worthman
Rebecca J.K. Gelfond
Shou Wang
kworthman@ftc.gov; rgelfond@ftc.gov;
swang@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mail Stop NJ-3158
Washington, DC  20580
Tel: (202) 326-2764 (Worthman)
Tel: (202) 326-2219 (Gelfond)
Tel: (202) 326-3791 (Wang)
Fax: (202) 326-3768

Raymond McKown (Local Counsel)
rmckown@ftc.gov
California Bar No. 150975
Federal Trade Commission
10877 Wilshire Blvd., Ste. 700
Los Angeles, CA  90024
Tel:  (310) 824-4325
Fax: (310) 824-4380

*Attorneys for Plaintiff FTC*

Paul W. Sweeney, Jr. (SBN 112511)
paul.sweeney@klgates.com
Bradley W. Gunning (SBN 251732)
brad.gunning@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendants Golden Empire
Mortgage, Inc. and Howard D. Kootstra*

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>GOLDEN EMPIRE MORTGAGE, INC.,<br>et al.,<br><br>        Defendants. | Case No. CV 09-03227 CAS (SHx)<br><br>**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**<br><br>Assigned to Honorable Christina A. Snyder |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), has filed a First Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint"), pursuant to Sections 5(a), 13(b), and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 57b; Section 704(c) of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691c(c); and Section 202.16(a)(2) of its implementing Federal Reserve Board Regulation B ("Regulation B"), 12 C.F.R. § 202.16(a)(2).

The Amended Complaint alleges that Defendants Golden Empire Mortgage, Inc. ("GEM" or the "Company") and Howard D. Kootstra (the "Individual Defendant") (collectively "Defendants") have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 701(a) of the ECOA, 15 U.S.C. § 1691(a), and Section 202.4 of its implementing Regulation B, 12 C.F.R. § 202.4.

The parties, by and through their respective counsel, have agreed to entry of this Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Order") by this Court, without trial or adjudication of any issue of fact or law, to settle and resolve all matters of dispute arising from the conduct alleged in the Amended Complaint.  Defendants deny that they have discriminated unlawfully. Plaintiff and Defendants waive all rights to seek judicial review or otherwise challenge or contest the validity of this Order, and Defendants waive any right that may arise under the Equal Access to Justice Act, 28 U.S.C. § 2412.

The parties having requested the Court to enter this Order, it is therefore ORDERED, ADJUDGED, AND DECREED as follows:

## **FINDINGS**

1.    This Court has jurisdiction over the subject matter and over the parties.

2.    The Amended Complaint states a claim upon which relief may be granted against Defendants under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b; and under the ECOA, 15 U.S.C. §§ 1691–1691f, and Regulation B, 12 C.F.R. pt. 202.

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

3.      The activities of Defendants are in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, as amended.

4.      GEM is a "creditor" as defined in Regulation B, 12 C.F.R. § 202.2(*l*).  For purposes of this action only, the Individual Defendant does not dispute the Commission's allegation that he is a "creditor" as defined in Regulation B.

5.      The parties, by and through their counsel, have agreed that entry of this Order resolves all matters in dispute between them arising from the facts and circumstances alleged in the Amended Complaint in this action, up to the date of entry of this Order.

6.      Entry of this Order is in the public interest.

## ORDER

## I.      DEFINITIONS

For purposes of this Order:

1.      "applicant" is synonymous in meaning and equal in scope to the definition of the term in § 202.2 of Regulation B, and means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit, including guarantors, sureties, endorsers and similar parties;

2.      "branch" means any of the offices from which GEM loan originators originate loans, including GEM's headquarters office;

3.      "branch manager" means any GEM employee with supervisory authority over any branch;

4.      "credit transaction" is synonymous in meaning and equal in scope to the definition of the term in § 202.2 of Regulation B, and means every aspect of an applicant's dealings with a creditor regarding an application for credit or an existing extension of credit (including, but not limited to, information requirements; investigation procedures; standards of creditworthiness; terms of credit; furnishing of credit information; revocation, alteration, or termination of credit; and collection procedures);

3

5.      "creditor" is synonymous in meaning and equal in scope to the definition of the term in § 202.2 of Regulation B, and means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of credit; and including a creditor's assignee, transferee, or subrogee who so participates; and including a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made;

6.      "Defendants" means Defendant Golden Empire Mortgage, Inc. and Defendant Howard D. Kootstra, individually, collectively, or in any combination;

7.      "discount point" means a percentage of the total mortgage loan amount, normally paid at closing, that the borrower pays to reduce the interest rate on the loan;

8.      "ECOA" means the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f, as amended;

9.      "GEM" means Golden Empire Mortgage, Inc., a corporation, and its successors and assigns;

10.      "loan" means a mortgage loan;

11.      "loan officer" means any GEM loan originator who is not a branch manager;

12.      "Loan Officer Prices" mean the prices of mortgage loans generated by GEM's electronic pricing system; Loan Officer Prices do not vary across branches;

13.       "loan originator" means any employee of GEM who originates mortgage loans on GEM's behalf, including but not limited to loan officers and branch managers;

14.      "mortgage loan" means any closed-end loan secured or to be secured by residential real property;

15.      "overage" means the amount by which the revenue from a loan origination exceeds the Required Revenue.  It is the sum, when positive, of the following items which can be positive (+) or negative (–) as indicated below:

(i)      the amount of branch fees above (+) or below (–) the Standard

4

Branch Fees;

(ii) the amount of origination fee above (+) or below (−) the Standard Origination Fee;

(iii) the amount of Loan Officer Price above (+) or below (−) the par rate;

(iv) any and all discount points paid by the borrower (+);

(v) any and all rebates or credits paid to the borrower by GEM, its branch or loan originator (−);

(vi) any and all fees charged to an applicant by GEM, its branch or loan originator that are not Standard Branch Fees, the Standard Origination Fee or Pass-Through Fees (+); and

(vii) any and all fees paid by GEM, a branch, or loan originator to one or more third parties on behalf of the applicant without reimbursement from the applicant (−);

Nothing in the above definition shall permit the double-counting of any fees, points, rebates or credits;

16. "Pass-Through Fee" means any fee charged to an applicant by GEM which GEM paid in total to a third party for services that the third party rendered to the applicant in connection with the loan origination;

17. "par rate" means the lowest interest rate for which no discount points are required for an applicant to obtain that rate; a par rate loan has the Loan Officer Price of 100;

18. "point" means one percent of the amount of the mortgage loan;

19. "Regulation B" refers to Federal Reserve Board Regulation B, 12 C.F.R pt. 202, as amended;

20. "Required Revenue" shall consist of the sum of the following: (1) the par rate, (2) any and all Standard Branch Fees, (3) and the Standard Origination Fee;

21. "Standard Branch Fees" mean the two sets of standardized fees, one for conventional loans and another for government-insured loans (*i.e.*, FHA, VA, FSA,

5

RHS), that do not vary across branches.  GEM may alter Standard Branch Fees, provided that the amount of Standard Branch Fees does not vary across branches;

22.    "Standard Origination Fee" means the standardized fee that does not vary across branches.  Currently, GEM's Standard Origination Fee is one percent (1%) of an applicant's loan amount, but GEM may alter the Standard Origination Fee, provided that the Standard Origination Fee does not vary across branches;

23.    "underage" means the amount by which the revenue from a loan origination is less than the Required Revenue.  It is the sum, when negative, of the following items which can be positive (+) or negative (−) as indicated below:

(i)    the amount of branch fees above (+) or below (−) the Standard Branch Fees;

(ii)    the amount of origination fee above (+) or below (−) the Standard Origination Fee;

(iii)    the amount of Loan Officer Price above (+) or below (−) the par rate;

(iv)    any and all discount points paid by the borrower (+);

(v)    any and all rebates or credits paid to the borrower by GEM, its branch or loan originator (−);

(vi)    any and all fees charged to an applicant by GEM, its branch or loan originator that are not Standard Branch Fees, the Standard Origination Fee or Pass-Through Fees (+); and

(vii)    any and all fees paid by GEM, a branch, or loan originator to one or more third parties on behalf of the applicant without reimbursement from the applicant (−).

Nothing in the above definition shall permit the double-counting of any fees, points, rebates or credits.

## II.    **INJUNCTION**

**IT IS THEREFORE ORDERED** that Defendants, and each of them, their successors and assigns, and their officers, agents, servants, and employees, and all

6

persons in active concert or participation with any one or more of them who receive actual notice of this Order by personal service or otherwise, directly or through any partnership, corporation, subsidiary, division or other device, are hereby permanently restrained and enjoined from:

A.     Engaging in any act or practice that discriminates against an applicant on the basis of national origin regarding any aspect of a credit transaction, including but not limited to originating, approving, or funding mortgage loans for which Hispanic applicants pay higher prices than non-Hispanic White applicants in violation of the ECOA or Regulation B; and

B.     Failing otherwise to comply with the ECOA and Regulation B.

### III.   PRICING POLICY AND PROCEDURE

**IT IS FURTHER ORDERED** that, within sixty (60) days from the date of entry of the Order and for a period of three (3) years thereafter, GEM and its successors and assigns is hereby restrained and enjoined from:

A.     Failing to designate a single senior manager as its fair lending compliance officer;

B.     Failing to implement Standard Branch Fees, that do not vary across branches, for conventional and government-insured loans;

C.     Charging any applicant an underage of more than one-half percent (0.5%) of an applicant's loan amount; *provided that* GEM may charge an applicant an underage of more than one-half percent (0.5%) of the applicant's loan amount if the loan originator for that mortgage loan creates a contemporaneous written narrative record of the reason(s) for the underage and causes that written record and all supporting documentation to be included with GEM's records of the mortgage loan.  In the event that the reason is the business necessity of matching a lower competing offer, the supporting documentation shall include a copy of the competing offer or a contemporaneous written narrative record explaining why such documentation was not obtained;

D.     Charging any applicant an overage that is greater than one percent (1%) of an applicant's loan amount;

E.     Charging any applicant an overage of more than one-half percent (0.5%) of an applicant's loan amount; *provided that* GEM may charge an applicant an overage of more than one-half percent (0.5%) of the applicant's loan amount but less than one percent (1%) if the loan originator for that mortgage loan (a) creates a contemporaneous written narrative record of the reason(s) for the overage that sufficiently describes the reason(s) for the overage and causes that contemporaneous written record and all supporting documentation to be included with GEM's records of the mortgage loan; and (b) obtains written and dated approval for the overage from the fair lending compliance officer prior to closing; and

F.     Failing to review, on a quarterly basis, the price of each loan originated. If the overage on any loan exceeds one percent (1%) of an applicant's loan amount, the excess will be refunded to the borrower.  GEM also will review the required written justifications for overages and underages greater than one-half percent (0.5%) of an applicant's loan amount to ensure that the reason(s) for each such overage and underage do not violate the ECOA or Regulation B.  At the request of counsel for the Commission and within thirty (30) days of the request, GEM shall produce loan files of all loans that have overages or underages exceeding one-half percent (0.5%) with the written documentation described in Sections III.C and III.E.

## IV.     FAIR LENDING POLICY AND MONITORING PROGRAM

**IT IS FURTHER ORDERED** that, in order to ensure GEM's uniform pricing of mortgage loans in compliance with the ECOA and Regulation B, GEM is hereby restrained and enjoined from failing to:

A.     Conduct periodic fair lending monitoring analyses and reviews analyzing loans originated on or after GEM's implementation of the Pricing Policy and Procedure described in Section III through December 31, 2013; the initial review shall be conducted on or before November 30, 2010, and subsequent reviews shall be

conducted at least annually, with the last review conducted on or before March 15, 2014;

B.     As part of the monitoring program, conduct two separate statistical analyses to identify whether GEM charged higher mortgage loan prices to Hispanic applicants in violation of the ECOA or Regulation B.  One analysis will examine the Annual Percentage Rate ("APR") of loans of non-Hispanic White applicants as compared to the APR of loans of Hispanic applicants.  The other analysis will examine the overages and underages (as a percentage of loan amounts) of loans of non-Hispanic White applicants as compared to Hispanic applicants.

For the APR analysis, GEM shall use only the following controls in its statistical model:

        (a)     Government/conventional

        (b)     Refinance/purchase

        (c)     Owner occupancy

        (d)     Existence of co-applicant

        (e)     Loan amount

        (f)     Lien status

        (g)     Action date

        (h)     Credit score

            a.  $< 520$

            b.  $520 \leq \text{Credit Score} < 540$

            c.  $540 \leq \text{Credit Score} < 560$

            d.  $560 \leq \text{Credit Score} < 580$

            e.  $580 \leq \text{Credit Score} < 600$

            f.   $600 \leq \text{Credit Score} < 620$

            g.  $620 \leq \text{Credit Score} < 640$

            h.  $640 \leq \text{Credit Score} < 660$

            i.   $660 \leq \text{Credit Score} < 680$

            j.   $680 \leq \text{Credit Score} < 700$

9

k.  $700 \leq$ Credit Score $< 720$

l.  $720 \leq$ Credit Score $< 740$

m. Credit score missing

(i)      Documentation type

(j)      Adjustable/fixed rate

(k)     Existence of balloon payment

(l)      6 month index

(m)   Interest-only

(n)    Prepayment penalty

(o)    Term

(p)    Loan-to-value (LTV)

(q)    Debt-to-income (DTI)

(r)     Cashout

(s)     Metropolitan Statistical Area (MSA) only if reflected on investor rate sheets

(t)     Investor

(u)    Rate lock period

(v)    Standard Branch Fees

With 60 days' notice to counsel for the Commission, GEM may add additional borrower or loan characteristics as controls to the foregoing APR analysis if such borrower or loan characteristics are used as factors in calculating the risk-based price of the loan by GEM's investors.  The notice must include evidence that GEM's investors are including the proposed additional factors when calculating the risk-based price of the loan.

For the overage/underage analysis, GEM shall use only the following controls:

(a)    Refinance/purchase

(b)    Piggyback

(c)    Loan amount

10

(d)     Government/conventional

C.     Submit a summary of the results of the initial and annual statistical analyses identified in Section IV.B, along with copies of the data, computer programs, and statistical output necessary to independently replicate those results, as well as the price investors paid for each originated loan, to the Commission within thirty (30) days of their completion.  If such summary results reveal statistically significant disparities, GEM shall make available within thirty (30) days for the Commission's inspection additional materials related to the disparities at issue, including the loan-level documentation of the reasons for overages and underages, as required by GEM's loan pricing policy set forth in Sections III.C and III.E; and

D.     Develop and implement policies and procedures for taking appropriate remedial measures if the analyses described in Section IV.B reveal statistically significant disparities in prices charged to Hispanic applicants as compared to non-Hispanic White applicants that are not explained by a business necessity as reflected in the loan-level documentation of the reasons for overages and underages required under Sections III.C and III.E.  In the event that either analysis set forth in Section IV.B reveals statistically significant pricing disparities that are not explained by a business necessity as reflected in the loan-level documentation of the reasons for overages and underages required under Sections III.C and III.E, appropriate remedial measures shall include, but are not limited to, one or more of the following: providing redress to affected borrowers; providing verbal or written counseling to loan originators; providing fair lending re-training; enhancing the scrutiny of loans originated by the applicable branch and/or loan originator; limiting or eliminating pricing discretion at the applicable branch, by the applicable loan originator, or as otherwise appropriate; and terminating employment.  GEM shall report within 30 days of the completion of the analyses required by Section IV.B the remedial measures that it employed in response to each analysis.

## V.     <u>FAIR LENDING TRAINING</u>

11

**IT IS FURTHER ORDERED** that, within ninety (90) days of the entry of this Order and for a period of three (3) years from the date of entry of this Order, Defendants are hereby enjoined from failing to:

A.     Establish and implement a fair lending training program.  The fair lending training under the program will be conducted by an independent qualified third party. The training may be presented live, by video conference, or through a computer-based format;

B.     Require all existing GEM senior corporate management, loan officers, branch managers, and other personnel such as underwriters, funders, and loan processors whose job responsibilities present fair lending risk to participate in and complete the fair lending training program;

C.     Require all branch managers and loan originators hired after the date of this Order to receive training within forty-five (45) days of their start date.  The training for newly-hired branch managers and loan originators is not required to be in the same format as the training for existing employees but shall cover the same content;

D.     Ensure that the fair lending training program addresses the following:

(i)     All aspects of the prohibition against discrimination in Section 701(a) of the ECOA, 15 U.S.C. § 1691(a), and Section 202.4 of Regulation B, 12 C.F.R. § 202.4;

(ii)     Defendants' pricing policy set forth in Section III, including but not limited to the limitations on overages and underages and the required documentation of the reason(s) for exceeding, where permitted, those limitations; and

(iii)     Defendants' fair lending monitoring program and the associated corrective actions set forth in Section IV; and

E.     At the conclusion of a fair lending training session, securing from each participant a signed statement acknowledging that he or she has completed the fair lending training.  This statement shall be substantially in the form of Appendix A (Fair Lending Training Acknowledgment).

12

## VI.   DATA INTEGRITY

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of the Order, Defendants are hereby enjoined from failing to establish and implement, within sixty (60) days of the entry of this Order, and thereafter to continuously operate and maintain a comprehensive data integrity program that is designed to ensure the accuracy and completeness of the data and other information that the Company collects regarding mortgage loan applicants, loan originator compensation, and mortgage pricing, including the data necessary to conduct the analyses identified in Section IV.B reliably and accurately.  The content and implementation of this program must be fully documented in writing, and Defendants shall ensure that any data integrity problems that may arise are promptly and thoroughly corrected.

## VII.   CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.   Judgment is hereby entered jointly and severally against Defendants and in favor of the FTC in the amount of five million five hundred thousand dollars ($5,500,000) as equitable monetary relief.

B.   The judgment against Defendants shall be suspended in part and subject to Section VIII of this Order, *provided that* GEM shall pay to the Commission the sum of one million five hundred thousand dollars ($1,500,000) within 10 days of the entry of this Order by electronic transfer, pursuant to instructions to be provided by counsel to the FTC.

C.   All funds paid pursuant to Subsection B of this Section shall be deposited into a fund administered by the Commission or its agent to be used to provide equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress fund.  The FTC shall have sole discretion in choosing an independent administrator to administer any redress program, and in determining which borrowers are eligible for redress as well as the amounts to be paid.  If the FTC determines in its sole discretion that direct redress to borrowers is

13

wholly or partially impracticable or if funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Amended Complaint. Any funds not used for such equitable relief shall be deposited into the United States Treasury as disgorgement. Defendants shall have no right to challenge the FTC's choice of remedies under this Section.

D.    In order to facilitate redress pursuant to this Section, no later than ten (10) business days after the date of entry of this Order, GEM shall deliver to the Associate Director for Financial Practices, Bureau of Consumer Protection, Federal Trade Commission, in a compatible electronic format (as determined by counsel for the Commission):

1.    Data comprising the full name, last known mailing address, last known home and work telephone numbers, entity to which the loan was sold, and loan number for each Hispanic applicant who obtained a mortgage loan through GEM's retail lending business during the period January 1, 2006 through December 31, 2009; and

2.    A sworn statement signed by a responsible GEM official that the data constitutes true, accurate, and complete data of all such applicants in its files.

E.    In the event that GEM defaults on any obligation to make a payment set forth in this Section, the entire unpaid amount set forth in Section VII.A together with interest, computed pursuant to 28 U.S.C. § 1961(a) from the date of default to the date of payment, shall immediately become due and payable from Defendants. Notwithstanding any other provision of this Order, Defendants agree that if GEM fails to meet any payment obligation set forth in this Section, Defendants shall be liable for the costs and attorneys' fees incurred by Plaintiff, the FTC, or its agents in any attempts to collect amounts due pursuant to this Order.

F.    Defendants relinquish all dominion, control, and title to the funds paid pursuant to this Section to the fullest extent permitted by law. Defendants shall make

14

no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

G.     Defendants agree that the facts as alleged in the Amended Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission solely to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case.

## VIII.  RIGHT TO REOPEN

**IT IS FURTHER ORDERED** that:

A.     The FTC's agreement to this Order, requiring that the judgment be suspended for less than the full amount of the judgment, is expressly premised upon the truthfulness, accuracy and completeness of Defendants' financial condition, as represented in Defendants' sworn financial statements, the supporting documents submitted to the Commission, and compliance with Section VII of this Order.  The financial statements contain material information upon which the FTC relied in negotiating and agreeing to this Order.  If, upon motion by the FTC, this Court finds that Defendants failed to disclose any material asset or materially misstated the value of any asset in the financial statements described above, made any other material misstatement or omission in the financial statements described above, or that Defendants violated Section VII of this Order in any material respect, the Court shall enter judgment in the amount of $5.5 million dollars ($5,500,000) in equitable monetary relief against Defendants, plus interest computed at the rate prescribed in 28 U.S.C. § 1961(a) which shall immediately begin to accrue, less any amounts previously paid by Defendants to the Commission.  *Provided, however, that*:

1.     In all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court; and

2.     Proceedings instituted under this Section would be in addition to, and not in lieu of, any other civil or criminal remedies as may be

15

provided by law, including any other proceedings that the FTC may initiate to enforce this Order.

B.     Each party shall bear its own costs and attorneys' fees incurred in connection with any action brought pursuant to Section VIII.

C.     For the sole purpose of any subsequent proceedings to enforce payments required by this Order, including but not limited to, a non-dischargeability action filed in a bankruptcy proceeding, Defendants waive any right to contest the allegations in the Amended Complaint.

## IX.     COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.     Within sixty (60) days after the date of entry of this Order, and by the anniversary date of this Order for a period of three (3) years, Defendants shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include, but not be limited to:

1.     For the Individual Defendant:

a.     Current contact information, including permanent mailing address, business address and telephone number.  The Individual Defendant shall notify the FTC of any changes in the Individual Defendant's contact information, within ten (10) days of the date of such change;

b.     Current employment status (including self-employment) that involves mortgage lending and the Individual Defendant's ownership in any business entity engaged in mortgage lending (not including GEM).  The Individual Defendant shall notify the FTC of any changes in the Individual Defendant's employment status (including self-employment) that involves mortgage lending, and any change in the Individual Defendant's ownership in any business entity engaged in mortgage lending, within ten (10) days of the date of such change.  Such notice shall include the name and address of each such business that the Individual Defendant is affiliated with,

16

employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of the Individual Defendant's duties and responsibilities in connection with the business or employment; and

2.   Defendants shall notify the Commission of any changes in the structure of GEM or any business entity engaged in mortgage lending that any Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to: incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, provided that, with respect to any proposed change in the business entity about which a Defendant learns less than thirty (30) days prior to the date such action is to take place, such Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

3.   For all Defendants:

a.   A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;"

b.   Such Defendant's efforts to comply with the requirements of this Order, an assessment as to the extent to which each requirement was met, and an explanation as to why any particular requirement was not met; and

c.   A copy of each signed statement acknowledging completion of fair lending training, as described in Section V.

B.   Each Defendant shall notify the Commission of the filing of a bankruptcy petition by such Defendant within fifteen (15) days of filing.

C.   For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, send by overnight courier all reports and notifications required by this Order to the Commission, to the following address:

Associate Director for Enforcement

Federal Trade Commission

17

600 Pennsylvania Avenue, N.W., Room NJ-2122

Washington, D.C. 20580

Re: **FTC v. Golden Empire Mortgage, Inc. & Howard D. Kootstra**

*Provided that*, in lieu of overnight courier, Defendants may send such reports or notifications by first-class mail, but only if Defendants contemporaneously send an electronic version of such report or notification to the Commission at:

DEBrief@ftc.gov

D. For purposes of the compliance reporting and monitoring required by this Order, the Commission is authorized to communicate directly with each Defendant. Defendants do not hereby waive their right to counsel in all communications with the Commission.

## X. <u>COMPLIANCE MONITORING</u>

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A. Within twenty (20) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, which are true and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in each Defendant's possession or direct or indirect control to inspect the business operation;

B. In addition, the Commission is authorized to use all other lawful means, including but not limited to:

1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

2. testing on behalf of the Commission wherein testers pose as consumers and suppliers to Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

18

C.     Defendants each shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or former or current employee who has agreed to such an interview, relating in any way to any conduct subject to this Order, *provided that,* advance notice is provided to Defendants by the Commission prior to any such interview of Defendants' current employee(s).  The person interviewed may have counsel present.

*Provided, however, that* nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 1691c(c)).

## XI.    <u>RECORD KEEPING</u>

**IT IS FURTHER ORDERED** that, for a period of four (4) years from the date of entry of this Order, Defendants and their agents, employees, officers, corporations, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

A.     Personnel records accurately reflecting:  the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

B.     Customer files containing credit transaction information concerning all borrowers and applicants;

C.     All business and accounting records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting;"

19

D.      Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests; and

E.      Copies of all sales scripts, training materials, advertisements, or other marketing materials.

*Provided, however, that* nothing in this Section shall relieve Defendants of their obligation to preserve records under Section 202.12 of Regulation B.

## XII.   DISTRIBUTION OF ORDER

**IT IS FURTHER ORDERED** that, for a period of three (3) years from the date of entry of this Order, Defendants shall deliver copies of this Order as directed below:

A.      GEM must deliver a copy of this Order to (1) all of its principals, officers, directors, and managers; (2) all of its employees, agents, and representatives who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection (A)(2) of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon GEM.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection (A)(2) of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.      The Individual Defendant as control person:  For any business engaged in mortgage lending (other than GEM) that the Individual Defendant controls, directly or indirectly, or in which the Individual Defendant has a majority ownership interest, the Individual Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A(2) of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon the Individual Defendant. For new personnel, delivery shall occur prior to them assuming their responsibilities.

20

For any business entity resulting from any change in structure set forth in Subsection A(2) of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

C.      The Individual Defendant as employee or non-control person:  For any business engaged in mortgage lending (other than GEM) where the Individual Defendant is not a controlling person of the business but otherwise engages in conduct related to the subject matter of this Order, the Individual Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.      Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Order, within thirty (30) days of delivery, from all persons receiving a copy of this Order pursuant to this Section.

## XIII.    ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that Defendants, within five (5) business days of receipt of the Order as entered by the Court, must submit to the Commission a truthful sworn statement acknowledging receipt of the Order.

## XIV.    RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

## XV.    FINAL JUDGMENT AND ORDER

The parties, by their respective counsel, hereby consent to the terms and conditions of the Order as set forth above and consent to the entry thereof.

**SO ORDERED.**

Dated this 23rd day of September, 2010.


_Christina A. Snyder_
HONORABLE CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

21

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

_____     Dated: _____

KATHERINE M. WORTHMAN
REBECCA J.K. GELFOND
SHOU WANG
kworthman@ftc.gov; rgelfond@ftc.gov; swang@ftc.gov
Federal Trade Commission
Bureau of Consumer Protection
Division of Financial Practices
600 Pennsylvania Avenue, NW
Mail Stop NJ-3158
Washington, D.C.  20580
Tel: (202) 326-2000
Fax: (202) 326-3768

_Attorneys for Plaintiff FTC_

STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER
EQUITABLE RELIEF

1   **FOR DEFENDANTS GOLDEN EMPIRE MORTGAGE, INC. AND HOWARD D. KOOTSTRA:**

2

3   _____     Dated: _____

4   HOWARD D. KOOTSTRA, individually and
    on behalf of Golden Empire Mortgage, Inc.

5

6   _____     Dated: _____

7   PAUL W. SWEENEY, JR.
    BRADLEY W. GUNNING

8

9   *Admitted Pro Hac Vice*
    PAUL F. HANCOCK
    K&L Gates LLP

10  Wachovia Financial Center, Suite 3900
    200 South Biscayne Boulevard

11  Miami, FL 33131
    Telephone:  305.539.3300

12  Facsimile:  305.358.7095

13  ELENA GRIGERA BABINECZ
    K&L Gates LLP

14  Four Embarcadero Center, Suite 1200
    San Francisco, CA 94111

15  Telephone: 415.882.8200
    Facsimile:  415.882.8220

16

17  MELISSA SANCHEZ MALPASS
    K& L Gates LLP

18  1601 K Street NW
    Washington, D.C. 20006

19  Telephone:  202.778.9000
    Facsimile:  202.778.9100

20  *Attorneys for Defendants Golden Empire Mortgage, Inc. & Howard D. Kootstra*

21

22

23

24

25

26

27

28

23

1

## **APPENDIX A**

2

Fair Lending Training Acknowledgment

3

4      I acknowledge that on _____, 20____, I received fair lending

5  training with respect to my responsibilities under the Stipulated Final Judgment and

6  Order for Permanent Injunction and Other Equitable Relief entered by the Court in

7  *Federal Trade Commission v. Golden Empire Mortgage, et al.,* (C.D. Cal.), and the

8  federal and applicable state fair lending laws.  I have had the opportunity to have my

9  questions about them answered.  I understand my legal responsibilities not to

10 discriminate under the federal fair lending laws, including the Equal Credit

11 Opportunity Act and Regulation B, and shall comply with those responsibilities.

12

13                                                                    _____

14                                                                    Signature

15                                                                    _____

16                                                                    Print Name

17                                                                    _____

18                                                                    Job Title

19                                                                    _____

20                                                                    Date

21

22

23

24

25

26

27

28

**STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**